# RECORD NO. 17-1222

In The

# United States Court Of Appeals
## For The Fourth Circuit

**JANET HODGIN; MICHAEL HODGIN, individually and on behalf of all others similarly situated; DIANNA MEY, individually and on behalf of a class of all persons and entities similarly situated; PHILIP CHARVAT, individually and on behalf of a class of all persons and entities similarly situated,**

***Plaintiffs – Appellants,***

**v.**

**UTC FIRE & SECURITY AMERICAS CORP., INC.; HONEYWELL INTERNATIONAL, INCORPORATED,**

***Defendants – Appellees.***

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHER DISTRICT OF WEST VIRGINIA AT CLARKSBURG**

---

## BRIEF OF APPELLANTS

---

**John W. Barrett**
**Jonathan R. Marshall**
**Ryan McCune Donovan**
**J. Zak Ritchie**
**BAILEY & GLASSER LLP**
**209 Capitol Street**
**Charleston, WV 25301**
**(304) 345-6555**

***Counsel for Appellants***

**Beth E. Terrell**
**TERRELL MARSHALL LAW GROUP, PLLC**
**936 North 34th Street**
**Suite 300**
**Seattle, WA 98103**
**(206) 816-6603**

***Counsel for Appellants***

GibsonMoore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 17-1222 Caption: Edith Bowler, et al. v. Monitronics International, Inc., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Janet Hodgin
(name of party/amicus)

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/J. Zak Ritchie Date: June 15 2017

Counsel for: Janet Hodgin

## CERTIFICATE OF SERVICE

**************************

I certify that on June 15, 2017 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/J. Zak Ritchie
(signature)

June 15, 2017
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 17-1222 Caption: Edith Bowler, et al. v. Monitronics International, Inc., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Michael Hodgin
(name of party/amicus)

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/J. Zak Ritchie Date: June 15 2017

Counsel for: Michael Hodgin

## CERTIFICATE OF SERVICE

**************************

I certify that on June 15, 2017 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/J. Zak Ritchie
(signature)

June 15, 2017
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 17-1222 Caption: Edith Bowler, et al. v. Monitronics International, Inc., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Diana Mey
(name of party/amicus)

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ John W. Barrett Date: 3/09/2017

Counsel for: Diana Mey

## CERTIFICATE OF SERVICE

**************************

I certify that on 3/09/2017 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ John W. Barrett
(signature)

3/09/2017
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 17-1222 Caption: Edith Bowler, et al. v. Monitronics International, Inc., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Philip Charvat
(name of party/amicus)

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ John W. Barrett Date: 3/10/2017

Counsel for: Philip Charvat

## CERTIFICATE OF SERVICE

**************************

I certify that on 3/10/2017 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ John W. Barrett
(signature)

3/10/2017
(date)

## TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES .......... iii

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 2

The Home Security Sales Model and Illegal Telemarketing .......... 2

The Appellees' Authorized Dealers .......... 4

Authorized Dealers Violate the Law; The Appellees Profit and Promote .......... 5

Multi-District Litigation .......... 10

The District Court's Decision .......... 12

SUMMARY OF ARGUMENT .......... 14

ARGUMENT .......... 16

I. The district court granted summary judgment without permitting Appellants to take essential discovery, even within the time remaining on the court's own scheduling order .......... 16

A. The Appellants' Rule 56(d) declaration specifically identified why discovery was necessary to fend off the Appellees' motions for summary judgment .......... 17

B. Counsel for the Appellants was not dilatory .......... 21

II. Even without full discovery, the district court's sole reason for rejecting Appellants' ratification theory of agency liability was legally wrong ........ 23

A. As the district court itself later recognized, ratification does not require a pre-existing agency relationship ........ 24

B. Under the application of the correct legal standard, the Appellees are not entitled to summary judgment on ratification ........ 29

CONCLUSION ........ 32

STATEMENT ON ORAL ARGUMENT ........ 32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**


*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 14, 16

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) .......... 27

*Bullock v. BankChampaign, N.A.*,
133 S. Ct. 1754 (2013) .......... 25

*Cilecek v. Inova Health Sys. Servs.*,
115 F.3d 256 (4th Cir. 1997) .......... 24-25

*Cmty. for Creative Non–Violence v. Reid*,
490 U.S. 730 (1989) .......... 24

*Doe I v. Unocal Corp.*,
395 F.3d 932 (9th Cir. 2002) .......... 25

*Gomez v. Campbell-Ewald Co.*,
135 S. Ct. 2311 (2015) .......... 12

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*,
721 F.3d 264 (4th Cir. 2013) .......... 15, 17, 18, 20

*Harrods Ltd. v. Sixty Internet Domain Names*,
302 F.3d 214 (4th Cir. 2002) .......... 18

*In re Joint Petition filed by DISH Network, LLC*,
28 FCC Rcd. 6574 (2013) .......... 5, 11, 24, 28

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,
No. 11-CV-90, 2014 WL 316476 (N.D.W. Va. Jan. 28, 2014) .......... 26

*In re Uwimana*,
274 F.3d 806 (4th Cir. 2001) ........................................................ 25

*Ingle ex rel. Estate of Ingle v. Yelton*,
439 F.3d 191 (4th Cir. 2006) .................................................. 16, 17

*Johansen v. HomeAdvisor Inc.*,
2016 WL 6432821 (S.D. Ohio October 31, 2016)............................ 27

*Kern v. VIP Travel Servs.*,
16-0008, 2017 WL 1905868 (W.D. Mich. May 10, 2017)................ 26

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014) ............................................. 26

*Makaron v. GE Sec. Mfg., Inc.*,
2015 WL 3526253 (C.D. Cal. May 18, 2015) ................................. 27

*Metco Prods., Div. of Case Mfg. Co. v. N.L.R.B.*,
884 F.2d 156 (4th Cir. 1989) .................................................. 18, 20

*Mey v. Monitronics*,
959 F. Supp. 2d 927 (N.D.W. Va. 2013).......................................... 11

*Mey v. Venture Data, LLC*,
--- F. Supp. 3d ---, 2017 WL 1193072
(N.D.W. Va. March 29, 2017)............................................ 24, 26, 29

*Moriarty v. Glueckert Funeral Home, Ltd.*,
155 F.3d 859 (7th Cir. 1998) ........................................................ 25

*Newport News Holdings Corp. v. Virtual City Vision, Inc.*,
650 F.3d 423 (4th Cir. 2011) ........................................................ 24

*Perry v. Scruggs*,
17 F. App'x. 81 (4th Cir. 2001)...................................................... 28

*Robins v. Spokeo, Inc.*,
742 F.3d 409 (9th Cir. 2014) ........................................................ 12

*Spitz v. Proven Winners N.A., LLC*,
759 F.3d 724 (7th Cir. 2014) .......... 18

*United States v. Procter & Gamble Co.*,
356 U.S. 677 (1958) .......... 17

**Statutes:**

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

47 U.S.C. § 227, *et seq.*
Telephone Consumer Protection Act (the "TCPA") .......... 1

47 U.S.C. § 227(b) .......... 2

47 U.S.C. § 227(c) .......... 2

47 U.S.C. § 227(c)(5) .......... 11

**Rules:**

Fed. R. Civ. P. 56(c)(1)(A) .......... 20

Fed. R. Civ. P. 56(d) .......... *passim*

**Other Authorities:**

Restatement (Third) of Agency,
§ 4.01 .......... 25

Restatement (Third) of Agency,
§ 4.03 .......... 29

## JURISDICTIONAL STATEMENT

This appeal comes from a multi-district litigation action in the United States District Court for the Northern District of West Virginia, which raises claims under the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, *et seq*. J.A. 1, 171. The district court had jurisdiction under 28 U.S.C. § 1331.

The district court granted the Appellees' motions for summary judgment by an order entered December 22, 2016, J.A. 1302, which was made final on January 17, 2017. J.A. 1329, 1332. Appellants filed their Notice of Appeal on February 14, 2017. J.A. 1333. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Did the district court jump the gun by awarding summary judgment with more than four months left in discovery, over the Appellants' objection and her counsel's Rule 56(d) affidavit, which specifically identified why additional discovery was essential to oppose the motions? **Yes.**

2. Alternatively, did the district court err by rejecting Appellants' ratification theory, based solely on the court's erroneous legal conclusion that ratification requires a pre-existing agency relationship? **Yes.**

## STATEMENT OF THE CASE

The Appellees manufacture home security systems and rely on a network of authorized dealers to sell their products. In the multi-district litigation below, potential classes of plaintiffs alleged that the Appellees' authorized dealers violated the Appellants' privacy rights by making millions of illegal telemarketing calls in contravention of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227(b) & (c).[1] Although the Appellees did not physically place the calls at issue, an entity can be held vicariously liable for calls made on its behalf.

The limited issues in this appeal revolve around whether the Appellees should be held vicariously liable for those dealers' violations of the TCPA.

### *The Home Security Sales Model and Illegal Telemarketing*

The home security sales model at issue in this case is distinct from most traditional manufacturer-wholesaler-retailer relationships. It has three components, each of which work closely together to market and

[1] 47 U.S.C. § 227(b) regulates the use of prerecorded telemarketing calls as well as the use of an autodialer to place calls to cellular telephone lines. Section (c) prohibits calls to numbers listed on the National Do Not Call Registry.

distribute home security products. The Appellees are manufacturers, who provide the home security equipment. Companies like the defendant below, Monitronics, provide monitoring services. And authorized dealers like defendants ISI and VMS market and install the equipment provided by the manufacturers.

ISI and VMS are telemarketers who call consumers like the Appellants and pitch a security package that includes a "free" alarm system and a multi-year monitoring contract with monthly payments. Monitronics pays the dealer for each monitoring contract. J.A. 1682 at 34:2-37:6, 68:12-71:9; J.A. 1694 at 37:3-7; J.A. 761. The authorized dealer negotiates with Honeywell or UTC the purchase price for each home security "kit." *See, e.g.,* J.A. 789, 800. The dealers pocket the difference between the revenue from Monitronics and the amount they pay for the kits. J.A. 1682 at 34:2-37:6.

Left unchecked, this business model has led to illegal telemarketing on a massive scale. The Appellants have identified calls to nearly 1.5 million unique numbers made on behalf of Honeywell in violation of the TCPA, plus illegal calls to over 900,000 unique numbers made on behalf of UTC.

### *The Appellees' Authorized Dealers*

As part of their sales model, the Appellees empowered ISI and VMS to represent the Honeywell and UTC brands in their interactions with consumers over the phone. Honeywell authorized ISI to represent itself as a Honeywell security products dealer, J.A. 1610 at 71:23-73:5, and UTC allowed VMS to hold itself out to the public as a "GE Securities Authorized Dealer." J.A. 802 at ¶ 5(B).[2] Both ISI and VMS were authorized to, and did, use Honeywell's and UTC's trade name and trade marks in their sales pitches.

For example, UTC provided scripts to its dealers to use in telemarketing. *See* J.A. 1039-43. In February 2011, UTC circulated scripts that "had a lot of early success" and told authorized dealers to "review them, role play, and help launch these with your team." *Id.* at 1039. The outbound script stated:

> Hello, this is (your name) calling for GE Home Technologies. As a public service we are making courtesy calls to homes in the (Zip Code) zip code to keep people informed about safety issues and to provide you with crime prevention tips to protect you, your home and our family. We recommend you visit one of the free websites that list criminal activity and registered

[2] UTC, which manufactures GE Security home security systems, acquired "GE Security" brand from GE Security, Inc. in March 2010. J.A. 962.

> sex offenders in your neighborhood. We want to e-mail you the links to these websites that contain free reports that are provided in part by our local law enforcement agencies. What is your e-mail address?

*Id.* at 1042-43. The follow up stated: "Hello, is this (prospect's name on lead)? This is (your name) calling from (Dealer) on behalf of GE Home Technologies." *Id.* UTC also offered "[s]ales lead opportunities" to top dealers. *Id.* at 1662, 1669.

***Authorized Dealers Violate the Law;***
***The Appellees Profit and Promote***

Despite repeatedly learning of their authorized dealers' ongoing violations of the TCPA, the Appellees accepted the fruits of the dealers' unlawful activity. Indeed, not only did the Appellees fail to terminate their scofflaw dealers, they actually rewarded them.

Honeywell received its first complaint specifically identifying ISI in 2011, when another (presumably law-abiding) dealer complained that ISI made an unsolicited sales call to his home.[3] J.A. 878. Honeywell

[3] Honeywell received frequent complaints about abusive telemarketing practices as early as 2009. J.A. 827-33, 856-76. While these early complaints do not mention ISI, telemarketers engaging in harassing practices often choose not to identify themselves. *See In re Joint Petition filed by DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 (2013). The only consumer complaints Honeywell produced in discovery related to ISI.

notified ISI about this complaint and others, but never told ISI to cease telemarketing. J.A. 1610 at 40:15-41:2, 131:3-134:6. Instead, when ISI threatened to take its business to a competitor later that year, Honeywell fought hard to keep ISI, which had become one of its top-five dealers. J.A. 1712; *id.* at 1727 at 46:23-47:24. In order to do so, it offered "price concessions," J.A. 1799 at 35:14-36:2, provided additional credit when ISI fell behind on payments, J.A. 1712, 1758-64, and gave ISI an award for high sales. J.A. 1806 ("We should give the award, as all our competitors are aware of ISI and have them targeted."). It worked, as Honeywell ultimately negotiated a deal to keep ISI on its team for another two years.

Thereafter, Honeywell continued to receive an unprecedented number of complaints about ISI's harassing telemarketing, including at least two lawsuits. J.A. 1727 at 72:6-17; *id.* at 1818-20, 890-909, 911, 915, 1823-25, 921; 923, 1828-30, 927, 936. Indeed, by the end of the year, Honeywell knew that ISI planned to change its name because of "litigation on aggressive phone calls to do not call list." J.A. 1843. But again, Honeywell did nothing to stop the illegal calling. Rather, it continued to cater to ISI by, for example: attending the grand-opening of ISI's new call center with a gift, J.A. 1838-40, 1843-44; congratulating

ISI for its "huge" sales in October 2012, *id.* at 1847-49 1852-56; pressuring other entities to extend ISI additional credit, *id.* at 1863-64, 1867-73; and even offering to help ISI with its name change, *id.* at 1859.

Even after all this, ISI once again threatened to leave Honeywell for a competitor in 2012. Again, Honeywell fought hard to keep it. J.A. 1876-77 (although the ISI account has been "challenging," we "all agree it's not an account we want to lose either"); *id.* 1833-35. On January 8, 2013, Honeywell pleaded with ISI to agree to an in-person meeting, saying "this is too important for me (us) to give up," "[w]e want to do everything we can to retain your business and partnership," and "I think we both know it's best to make absolutely clear that we have done everything we can do to remain partners." *Id.* at 1883-86. But this time the plea didn't work, and ISI left.

The story of UTC and VMS reads largely the same. UTC received frequent and consistent complaints from consumers about telemarketers who said they were calling from "GE Security." *See, e.g.,* J.A. 2088-91, 1047-49 (complaint from a GE Security dealer about calls to his wife who said he was "hearing about it more often, and more blatant examples, since UTC came into the picture"); *id.* at 1721-24, 2094, 2098-99 ("I am

sick and tired of people saying they are GE—when is your company going to get proactive."); *id.* at 2102 ("My husband and I receive multiple daily calls from this company."). UTC even received complaints from its own employees and from GE in-house counsel and management. J.A. 2105, 2108, 2111-12. And many of these complaints could be traced to VMS. *See, e.g.,* J.A. 2115-16, 2119, 2122-26; *id.* at 2130 (noting that "it does not seem that VMS has fully implemented the training provided by Chris, ensured it is complying with telemarketing rules, or fully trained its telemarkers [sic]").

Instead of taking action against VMS and other dealers that were generating the complaints, however, UTC rewarded them. In May 2011, UTC presented VMS with a "High Volume Dealer of the Year" award. J.A. 2156-57. UTC even gave VMS a "Million Dollar Club" award in February 2012. *Id.* In addition, UTC negotiated more favorable pricing for VMS on more than one occasion. J.A. 2160-80. And when VMS threatened to take its business to another manufacturer in early 2012, UTC offered numerous incentives for it to stay. J.A. 1101; *see also id.* at 2183-85. UTC even offered to contribute to VMS's marketing costs,

knowing that VMS relied almost exclusively on telemarketing. J.A. 2188-89; *see also id.* 1591-92 at 28:11-29:9.

Later, in April 2012, GE's corporate office informed UTC that "since we sold the GE Security business, GE's name has been drawn into reputation-damaging marketing efforts whereby a UTC contractor, or their subcontractor, uses heavy handed telemarketing or harassing sales calls that damage GE's reputation." J.A. 2192-93. GE cited VMS as one of three examples, noting that "[t]here were complaints of repeated calls made by the company to consumers, with an instance where calls were occurring four times a day for three weeks continuously." J.A. 1082. That same month, the Today Show contacted GE Corporate about a story on telemarketing abuses in selling home security systems and specifically asked about VMS. J.A. 2196-98. UTC ultimately terminated its contract with VMS in April 2012, stating that it was because of the facts in Plaintiffs' opposition to VMS's summary judgment motion. J.A. 2201. Internally, however, UTC recognized that it was "a joint firing. Us them and they us. We were in danger of losing them to 2gig over price and then the[y were] implicated in 'do not call list' violations and we terminated the relationship." J.A. 2205.

UTC continued to court its top dealers, including ISI after it left Honeywell. J.A. 1935, 2208. UTC also entered into a Channel Partner Agreement with Maximum Security despite receiving complaints about its telemarketing violations. J.A. 1117, 2255, 2270, 2276. In June 2013, UTC reported that "[s]trong relationships, firm entrenchment and approvals within all dealer programs have sustained current dealers and led to ongoing referral and growth," and "[a]nnual dealer incentive and growth programs have ensured consistency and growth while keeping competition at bay." J.A. 2241. The telemarketing complaints continued. *See* J.A. 2283 (in September 2013, Maximum Security's estimated 2013 sales were $3.5 million, but "concerns" include "[d]o not call list" and "[e]xternal lawsuits."), 2286-87 (complaints about ISI), 2290-94.

***Multi-District Litigation***

After receiving an illegal telemarketing call, Plaintiff Diana Mey filed a putative class action in West Virginia state court, alleging that VMS had violated the TCPA on behalf of UTC and Monitronics. Defendants removed to the Northern District of West Virginia in 2011, and UTC and Monitronics filed motions for summary judgment in January 2012.

The motions challenged whether the phrase "on behalf of," located in 47 U.S.C. § 227(c)(5), exposed them to TCPA liability when the parties did not dispute that Monitronics and UTC did not physically place the calls to Mey. Upon being advised that the FCC would soon issue a declaratory ruling on the scope of "on behalf of" liability under the TCPA, however, the district court entered a stay. After the FCC issued its ruling, *In re Joint Petition Filed by Dish Network, LLC, et al.*, 28 F.C.C. Rcd. 6574 (May 9, 2013), the court lifted the stay and denied the motions. *See Mey v. Monitronics*, 959 F. Supp. 2d 927 (N.D.W. Va. 2013).

In December 2013, the panel on multidistrict litigation transferred additional cases brought by plaintiffs who, like Ms. Mey, received telemarketing calls from Defendants to the Northern District of West Virginia. Plaintiffs diligently conducted written discovery throughout 2014 and 2015, receiving multiple productions of millions of pages of documents from UTC, Honeywell, and Monitronics.

In May 2015, Plaintiffs sent Defendants a list of over thirty individuals they wanted to depose, including six individuals associated with UTC and one with Honeywell. But before the parties could schedule these depositions, the court stayed the case again, pending Supreme

Court review of *Gomez v. Campbell-Ewald Co.*, 135 S. Ct. 2311 (2015) and *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014). Approximately one year later, the case was reassigned from Judge Irene Keeley to Judge John Preston Bailey, who lifted the stay. J.A. 223. Following supplemental briefing on *Spokeo,* the court held a status conference on July 26, 2016, where UTC and Honeywell informed the court of their intention to file early motions for summary judgment.

### *The District Court's Decision*

In their second wave of motions for summary judgment, UTC and Honeywell argued that: (1) they could not be vicariously liable because they were not "sellers;" and (2) no reasonable jury could find them vicariously liable under the plaintiffs' theories of actual agency, apparent authority, or ratification. With respect to the plaintiffs' ratification theory, both defendants relied primarily on a single legal premise: that ratification requires a pre-existing agency relationship. Plaintiffs countered that significant disputed issues existed with respect to each theory of vicarious liability and, in particular, that ratification *could* exist outside of an existing agency relationship as a purely legal matter. Importantly, Plaintiffs also requested an opportunity pursuant to Fed. R.

Civ. P. 56(d) to take critical depositions they had sought to take before the case was stayed. J.A. 725.1-725.4.

In its order, the district court cited three cases—none from the Fourth Circuit—that it found "instructive." J.A. 1313. After "application of the above cases to the facts of the case," the court concluded that the plaintiffs' evidence was insufficient to move forward against UTC and Honeywell. J.A. 1325. Although the court's summaries of the "instructive" cases recited those courts' assertions that ratification requires an existing agency relationship, the court's analysis made no reference at all to the plaintiffs' ratification theory.

The court wrapped up its decision by further ruling that it did "not *believe* that the plaintiffs should receive additional time to conduct discovery," because "*it would appear* that the plaintiffs have been dilatory in failing to pursue the further deposition of UTC they now claim they need." J.A. 1327 (emphasis added). The district court explained that the plaintiffs "*appear to* have made no attempt to reschedule the additional 30(b)(6) deposition that they now claim is necessary, despite having over three months to do so between June 8, 2016, when the stay

was lifted, and the date their Opposition was due." J.A. 1328 (citation omitted) (emphasis added).

Yet nowhere did the district court's own scheduling order limit depositions to the referenced three-month period. J.A. 224. In any event, the district court did not mention, much less discuss, the plaintiffs' Rule 56(d) declaration, which specifically explained why the plaintiffs needed to take depositions in order to respond to the Appellees' motions, and that they could do so within the time set out in the court's own scheduling order. J.A. 725.3.

The district court's order was made final on January 17, 2017. J.A. 1329, 1332. This appeal followed. J.A. 1333.

## SUMMARY OF ARGUMENT

In its decision granting summary judgment, the district court committed two distinct legal errors, either of which warrants reversal.

*First*, the district court jumped the gun by awarding summary judgment with more than four months left in discovery, despite the Appellant's Rule 56(d) declaration specifically explaining why continued discovery was essential. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) ("Summary judgment must be refused where the non-

moving party has not had the opportunity to discover information that is essential to its opposition."). Under this Court's precedent, requests to continue discovery under Rule 56(d) are "favored" and should be "liberally granted." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc) (quotations omitted). But the district court erred by applying the wrong legal standard, leaving the Appellant unable to adequately respond to the Appellees' premature motions.

*Second*, despite the lack of full discovery, the Appellees were *still* not entitled to summary judgment on Appellants' ratification theory of agency, based on the district court's mistaken conclusion that ratification requires a pre-existing agency relationship. Vicarious liability under the TCPA is based on the Restatement, which unequivocally states that a principal can ratify the acts of a non-agent. Indeed, the same district court that issued the order on review has since reversed course on this point in a published opinion handed down just months after the decision on review here. Under the proper application of the law, the Appellants adduced more than enough evidence to create a genuine issue of material

fact concerning whether the Appellees ratified the authorized dealers' unlawful acts. Summary judgment was therefore unwarranted.

## ARGUMENT

### I. The district court granted summary judgment without permitting Appellants to take essential discovery, even within the time remaining on the court's own scheduling order.

It should go without saying that "[s]ummary judgment must be refused where the non-moving party has not had the opportunity to discover information that is essential to its opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986). This Court has long-held that a district court is *required* to permit a party to engage in discovery where the information sought is essential to a party's summary judgment opposition, is within the knowledge and control of the opposing party, and where the party seeking discovery timely identifies the existing and relevant information. *See Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 196 (4th Cir. 2006).

The Appellants satisfied this standard, as their timely-filed Rule 56(d) declaration explained. J.A. 725.1. Yet the district court was unmoved, and granted summary judgment because the "evidence advanced" by the Appellants was "wholly insufficient to permit the

plaintiffs to continue." J.A. 1325. But trial generally — and Rule 56 in particular — is not "a game of blind man's bluff." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

Accordingly, the district court's refusal to defer consideration of the motions to allow Appellant to conduct discovery — discovery well within the time provided in the court's scheduling order — was an abuse of discretion. *See Ingle*, 439 F.3d at 195; *see, e.g.*, *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc) (finding abuse where "the district court's rationale for denying the [plaintiff] its right to discovery was patently erroneous").

### A. The Appellants' Rule 56(d) declaration specifically identified why discovery was necessary to fend off the Appellees' motions for summary judgment.

Speaking en banc, this Court has explained that a nonmovant takes "the proper course" when it files a Rule 56(d) declaration "stating that it could not properly oppose . . . summary judgment without a chance to conduct discovery." *Greater Baltimore*, 721 F.3d at 281 (quotations omitted). "Such a request is broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties

from summary judgment motions that they cannot adequately oppose." *Id.* (quotations omitted); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 & n.18 (4th Cir. 2002). The district court failed to heed these instructions, effectively applying the wrong legal standard. *See Greater Baltimore*, 721 F.3d at 281 ("[A] district court by definition abuses its discretion when it makes an error of law.").

In this case, when the Appellees moved for summary judgment, around *eight months remained to conduct discovery* according to the district court's own scheduling order. J.A. 132, 135, 224. Appellees' motions sought summary judgment on Appellants' agency theories of liability, which even the district court acknowledged was a "notoriously fact-bound question. . . ." J.A. 1311 (quoting *Spitz v. Proven Winners N.A., LLC*, 759 F.3d 724, 731 (7th Cir. 2014)); *see also Metco Prods., Div. of Case Mfg. Co. v. N.L.R.B.*, 884 F.2d 156, 159 (4th Cir. 1989).

In opposition to the Appellees' boldly premature and fact-bound motions, the Appellants filed (among other things) a Rule 56(d) declaration, which detailed why discovery was necessary to rebut Appellees' assertions that no evidence of agency was present while promising to do so within the then-governing timeframe. J.A. 725.1-

725.4. The Rule 56(d) declaration explained that the Appellants had already received voluminous written discovery from the Appellees and had not yet taken a deposition of their representatives — which Appellants explained would be "critical to fully exploring the agency issues raised in the summary judgment motions." J.A. 725.3. Specifically, the Appellants explained under penalty of perjury that "[d]epositions will allow effective cross-examination regarding the agency-related documents appended to this Declaration, and will produce evidence directly from the Defendants' representatives, and not filtered through potentially self-serving documents." *Id.*

As a further example, Appellants explained in their Rule 56(d) declaration that they had "obtained over 183,000 pages of documents" from ISI, "the authorized Honeywell dealer that placed telemarketing calls at issue in the case." J.A. 725.2. Along with productions from the other alleged agent, VMS, the document discovery was directly relevant to the agents' relationship to the principals. Cutting short discovery by preventing the Appellants from processing and reviewing these documents ahead of Rule 30(b)(6) depositions, however, was a critical error. Yet despite the fact that Appellants' declaration is precisely what

Rule 56(d) and this Court require under such circumstances, *see Greater Baltimore*, 721 F.3d at 281, the district court refused to credit it. *But see Metco Prods.*, 884 F.2d at 159 (generally "the existence and scope of agency relationships are factual matters," typically reserved for the jury).

Compounding the district court's error in refusing to permit Appellants to conduct discovery—*even within the court's own discovery schedule*—was that the questions put at issue by the Appellees' Rule 56 motions were *factual* in nature. Even the district court acknowledged this. *See* J.A. 1325 ("After application of the above cases to the facts of this case, this Court holds that the evidence advanced in this case is wholly insufficient to permit the plaintiffs to continue against the movants."). Yet, as this en banc Court explained in *Greater Baltimore*, "[d]iscovery is *usually essential* in a contested proceeding prior to summary judgment because '[a] party asserting that a fact . . . is genuinely disputed must support the assertion by,' inter alia, 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" 721 F.3d at 280 (quoting Fed. R. Civ. P. 56(c)(1)(A)) (emphasis added).

The district court's refusal to even defer ruling on the motions until discovery closed, or at least until the Appellants had a reasonable opportunity to depose the Appellees' representatives on the factual issue of whether agency relationship existed based on the massive document production by the Appellees, was an abuse of discretion. Allowing the district court's order to stand — which, to reiterate, relies on the alleged insufficiency of evidence provided by the Appellants — threatens to make Rule 56(d) a dead letter.

### B. Counsel for the Appellants was not dilatory.

To justify its hurried approach, the district court labelled Appellants' counsel "dilatory." Yet the court's only support for this assertion was that counsel for Appellants failed to reschedule a deposition within an *arbitrary three-month period* after the district court lifted the stay. J.A. 1328 ("Plaintiffs appear to have made no attempt to reschedule the additional 30(b)(6) deposition that they now claim is necessary, despite having over three months to do so between June 8, 2016, when the stay was lifted [Doc. 660], and the date their Opposition was due."). However, the three-month period to which the district court held the Appellants is *nowhere identified* in the court's own scheduling

order as the only period in which the Appellants could take depositions. J.A. 224. On the contrary, the scheduling order permitted depositions beyond that period. *See id.*

In any event, in its order lifting the stay, the district court ordered the parties to complete supplemental briefing on the *Spokeo* decision within fourteen days. J.A. 725.3. The court then set a status conference for July 26. *Id.* It was only at that status conference that the Appellants learned that the Appellees intended to file motions for summary judgment. UTC filed its summary judgment motion three weeks later and Honeywell filed its motion two week after that. Plaintiffs filed their opposition only a few weeks later.

Worse still, the district court's explanation that the Appellants "failed to mention the need for further discovery" is belied by the Rule 56(d) declaration filed with their opposition. *Compare* J.A. 1328 *with* J.A. 725.1-725.3. Appellants most certainly did "mention the need for further discovery," and in fact demanded it in their Rule 56(d) declaration—and were entitled to it. *See id.*

Even apart from the district court's improper decision to disregard the Rule 56(d) declaration, the Appellants should have been able to rely

on the district court's *own scheduling order* before being blindsided by an order granting those motions based on alleged factual insufficiency.

* * *

A party opposing summary judgment with only partial discovery is effectively blindfolded. And then to hold the blinded opponent to discovery limitations not contained in the governing scheduling order subjects him to an ambush. The Rules of Civil Procedure do not permit such a result.

## II. Even without full discovery, the district court's sole reason for rejecting Appellants' ratification theory of agency liability was legally wrong.

The only basis for the district court's rejection of the Appellants' ratification theory was the court's erroneous conclusion that ratification *requires* a pre-existing agency relationship, which the court found did not exist. But the court's conclusion is contrary to the Restatement, upon which the federal common law of agency is based, as well as numerous decisions analyzing vicarious liability under the TCPA, including a later opinion by *the same district court* in another TCPA vicarious liability case. Under the correct legal standard, the Appellants — even without the benefit of the full discovery period to which they were entitled —

provided more than enough evidence to withstand summary judgment on vicarious liability. *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 435 (4th Cir. 2011) (this Court reviews a district court's order granting summary judgment is de novo, viewing facts in the light most favorable to the nonmoving party).

### A. As the district court itself later recognized, ratification does not require a pre-existing agency relationship.

In a seminal 2013 order, the Federal Communications Commission resolved a longstanding debate about the TCPA by holding that an entity "may be held vicariously liable under federal common law principles of agency for violations . . . committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) (the "2013 Order"). The Supreme Court, this Court, other courts of appeals, and district courts within this circuit have all looked to the Restatement as the source for these federal agency principles.[4]

---

[4] *See Mey v. Venture Data, LLC,* --- F. Supp. 3d ---, 2017 WL 1193072, at * 12 (N.D.W. Va. March 29, 2017) (Bailey, J.) (citing *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 752 n.31 (1989) ("In determining whether a hired party is an employee under the general common law of agency, we have traditionally looked for guidance to the Restatement of Agency."); *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d

Contrary to the district court's conclusion, the Restatement clearly provides that ratification *does not* require a pre-existing agency relationship. Rather, it instructs that "[r]atification is the affirmance of an act done by another, whereby the act is given effect *as if done by an agent* acting with actual authority." Restatement (Third) of Agency, § 4.01. And the commentary states unequivocally: "ratification may create a relationship of agency where none existed between the actor and the ratifier at the time of the act." *Id.* (drafter's comment); *see also id.,* intro. note ("A person may ratify the act of an actor who was not an agent at the time of acting when the actor purported or assumed to act as the person's agent. Ratification thus may create an agency relationship after the fact") (citations omitted).

---

256, 260 (4th Cir. 1997) ("To determine the general common law of agency, the [Supreme] Court notes that it has traditionally looked to sources such as the Restatement of Agency"); *In re Uwimana*, 274 F.3d 806, 812 (4th Cir. 2001), *abrogated on other grounds by Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013) (citing Restatement (Second) of Agency for definition of ratification); *Doe I v. Unocal Corp.,* 395 F.3d 932, 972 (9th Cir. 2002) ("The general principles of the federal common law of agency have been formulated largely based on the Restatement of Agency."); *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 n.15 (7th Cir. 1998) ("In developing the federal law of agency, courts have relied on the Restatement of Agency as a valuable source for those general agency principles.").

Numerous federal courts addressing vicarious liability under the TCPA have adopted the Restatement view.[5] Perhaps most tellingly, *so has the same district court whose order is on review here*, in a published opinion handed down just months after the order now on review. In *Mey v. Venture Data*, Judge Bailey denied a defendant's motion for summary judgment on ratification, citing the Restatement for the straightforward proposition that "ratification *does not require* the existence of an agency relationship." *Venture Data*, -- F. Supp. 3d --, 2017 WL 1193072, at * 14 (emphasis added). In deciding this appeal, this Court should credit Judge Bailey's more recent decision in *Venture Data*, which addressed ratification in great detail, over the opinion in this case, which contained no substantive discussion of the Appellants' ratification theory whatsoever.

---

[5] *See, e.g, Kern v. VIP Travel Servs.,* 16-0008, 2017 WL 1905868, at *9 (W.D. Mich. May 10, 2017) (recognizing that ratification can give rise to vicarious liability without "pre-existing principal-agent relationship"); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) ("The 2013 FCC Ruling recognized that an agency relationship could arise by ratification"); *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.,* No. 11-CV-90, 2014 WL 316476, at *6 (N.D.W. Va. Jan. 28, 2014) ("Vicarious liability [for TCPA violations], however, does not require proof of a formal agency relationship; instead, a plaintiff may use principles of apparent authority and ratification to establish such liability.").

Without explanation, in the order on review here, the district court repeatedly cited and deferred to the authority of the Restatement on the issue of ratification, *see* J.A. 1323-24, but then ignored the Restatement's clear direction that a pre-existing agency relationship is *not required*. Instead, the court seems to have based its rejection of the Appellant's ratification theory on two unreported cases from other jurisdictions. *See* J.A. 1316-1325.

The first, *Makaron v. GE Sec. Mfg., Inc.*, is poorly-reasoned and inconsistent with the Restatement principles upon which this Circuit has relied. 2015 WL 3526253 (C.D. Cal. May 18, 2015). The *Makaron* court based its erroneous ruling that ratification requires agency solely on the Ninth Circuit's decision in *Batzel v. Smith* — but *Batzel* itself cites no authority for that remarkable holding. *See id.,* 333 F.3d 1018, 1036 (9th Cir. 2003). And the second case, *Johansen v. HomeAdvisor Inc.*, does not actually stand for the proposition that ratification requires a pre-existing agency relationship, but rather supports the traditional Restatement position. 2016 WL 6432821 at *6 (S.D. Ohio October 31, 2016)

(recognizing that ratification may be based on the act of an agent *or* a person who merely purports to act on the ratifier's behalf).[6]

The FCC notes that vicarious liability exists under the TCPA because "potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules." *Dish Network*, 28 FCC Rcd. at 6588. But applying requiring a pre-existing agency relationship would have precisely the opposite effect. Companies could reap the benefits of unlawful telemarketing while immunizing themselves from liability simply by taking steps to avoid direct control over their agents or the appearance thereof. No control means no pre-existing agency relationship, which, under *Batzel*, means no possibility of ratification and therefore no liability. Thus, sellers would have less incentive to monitor the telemarketers they hire, frustrating the "incentives to ensure that their telemarketers comply with [the TCPA]." *Id.*

[6] The district court also purported to rely on a footnote from an unpublished Fourth Circuit case, *Perry v. Scruggs*, but: (1) *Perry* involved the application of Virginia law, not the federal common law of agency; and (2) in any event, nothing in *Perry* supports the proposition that ratification applies only where there is a pre-existing agency relationship. *See* 17 F. App'x. 81 (4th Cir. 2001).

In deciding this appeal, this Court should rely on the wisdom of the Restatement and even the district court's better judgment in in *Venture Data* to conclude that the court erred in rejecting the Appellant's ratification theory in this case based solely on the lack of a pre-existing agency relationship.

**B. Under the application of the correct legal standard, the Appellees are not entitled to summary judgment on ratification.**

Had the district court applied the proper Restatement principles (the same ones it later employed in *Venture Data*), the Appellees would not have been entitled to summary judgment, because there is sufficient evidence that the Appellees ratified the illegal conduct of their authorized dealers.

As Judge Bailey later (correctly) put it, ratification "requires only that the [the plaintiff] prove that [the defendant] was aware of [the third-party's] acts and accepted their benefits." *Venture Data*, -- F. Supp. 3d --, 2017 WL 1193072 at *14. While the third party need not be an agent, it must *act or purport to act on behalf of the ratifier*. *See* Restatement (Third) of Agency § 4.03. In its 2013 Order, the FCC echoed the Restatement, holding that "a seller may be bound by the unauthorized

conduct of a telemarketer if the seller 'is aware of ongoing conduct encompassing numerous acts by [the telemarketer]' and the seller 'fail[s] to terminate,' or, in some circumstances, 'promot[es] or celebrat[es]' the telemarketer." 2013 FCC Order at ¶ 34 n.104. Even without the benefit of full discovery, Appellants have adduced enough evidence to satisfy these requirements.

*First*, both dealers were allowed to, and did, use the Appellees' trade names, and held themselves out as UTC and Honeywell's authorized dealers. Even if that did not make them agents of the Appellees, a reasonable jury could conclude that, in doing so, the offending dealers purported to act on Honeywell's and UTC's behalves. The telemarketing script provided by UTC to and used by its dealer VMS starkly illustrates that VMS was representing themselves to consumers as GE or calling on behalf of GE. J.A. 1042-43 ("Hello, this is (your name) *calling for GE Home Technologies*.") (emphasis added).

*Second*, both Honeywell and UTC were aware of their authorized agents' unlawful telemarketing, and eagerly accepted the benefits thereof. In 2011, Honeywell received an unprecedented amount of complaints about illegal telemarketing from ISI — at the same time ISI

was generating enormous revenue for Honeywell as a top-five dealer. Similarly, UTC received frequent and consistent complaints about VMS's unlawful dialing, while simultaneously recognizing VMS as the "High Volume Dealer of the Year."

*Third*, Honeywell and UTC not only failed to terminate the offending dealers, but celebrated and promoted them. Both Appellees turned a blind eye to illegal conduct while going out of their way to keep the dealers on board and generating more sales. Those efforts included offering breaks on pricing, arranging extensions of credit, and quite literally "celebrating" their law-breaking dealers with awards and parties. According to the 2013 FCC Order, this is textbook ratification of illegal telemarketing.

Accordingly, the Appellants should have been entitled to go to a jury on their theory of vicarious liability by ratification. This is the analysis the district court should have applied, rather than rejecting the Appellants' ratification theory based solely on the badly flawed legal premise that ratification requires a pre-existing agency relationship.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed.

## STATEMENT ON ORAL ARGUMENT

Oral argument is needed here because this case presents an important question of first impression in this Circuit involving the application of federal common law, the FCC's 2013 Order, and the Telephone Consumer Protection Act.

Dated: June 15, 2017

Respectfully submitted,

/s/ John W. Barrett
John W. Barrett
Jonathan R. Marshall
Ryan McCune Donovan
J. Zak Ritchie
BAILEY GLASSER LLP
209 Capitol St.
Charleston, WV 25301
Tel. 304-345-6555
Fax 304-342-1110

Beth E. Terrell
TERRELL MARSHALL
LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, WA 98103
(206) 816-6603

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

1. This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   this document contains 6,247 words.

2. This document complies with the typeface requirements because:

   this document has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Century Schoolbook.

Dated: June 15, 2017

/s/ John W. Barrett
John W. Barrett

*Counsel of Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 15, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all the registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA 23218
(804) 249-7770
shelly@gibsonmoore.net

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 15, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all the registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA 23218
(804) 249-7770
shelly@gibsonmoore.net